Edna HICKS d/b/a THE BEAUTY BOX
*v.* ARKANSAS STATE MEDICAL BOARD

76-13                                    537 S.W. 2d 794

Opinion delivered June 21, 1976

*Kip Glassock,* Port Arthur, Tex., and *John M. Fincher,* of counsel, for appellant.

*Eugene R. Warren,* for appellee.

ELSIJANE T. ROY, Justice. Appellant Edna Hicks, a licensed cosmetician, desired to offer ear piercing as a service to her customers. She filed a petition with the Arkansas State Medical Board (hereafter Board) requesting a declaratory ruling that the piercing of ears was not within the definition of the practice of medicine or surgery. On June 12, 1975, the Board after a hearing decided that ear piercing was encompassed in the phrase "the practice of medicine" as defined in Ark. Stat. Ann. § 72-604 (Repl. 1964).[1] The circuit court affirmed the decision of the Board and from that affirmation comes this appeal.

Appellant first urges that "the findings, conclusions and decision of the Board, affirmed by the circuit court, are based upon an error of law." Ark. Stat. Ann. § 72-604(1) provides:

> (1) The term "practice of medicine" shall mean: (a) holding out one's self to the public within this state as being able to diagnose, treat, prescribe for, palliate or prevent any human disease, ailment, injury, deformity, or physical or mental condition, whether by the use of drugs, surgery, manipulation, electricity, or any physical, mechanical or other means whatsoever; (b)

---

[1] Jurisdiction of the Board to determine this issue has not been raised, and we do not consider it in this opinion.

suggesting, recommending, prescribing or administering any form of treatment, operation or healing for the intended palliation, relief, or cure of any physical or mental disease, ailment, injury, condition or defect of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift, or compensation whatsoever; (c) the maintenance of an office, or other place to meet persons, for the purpose of examining or treating persons afflicted with disease, injury or defect of body or mind; (d) using the title M.D., M.B., Physician, Surgeon, or any word or abbreviation to indicate or induce others to believe that one is engaged in the diagnosis or treatment of persons afflicted with disease, injury or defect of body or mind, except as otherwise expressly permitted by the laws of this state now or hereafter enacted relating to the practice of any limited field of the healing arts; or (e) *performing any kind of surgical operation upon a human being.* If any person who does not possess a valid license to practice medicine within this state and who shall not be exempted from the licensing requirements hereunder, shall do any of the acts hereinabove mentioned as constituting the practice of medicine, shall be deemed to be practicing medicine without complying with the provisions of this Act [§§ 72-601, 72-603 — 72-623] and in violation thereof.

We consider the issue raised in this case to be primarily a question of interpretation of the definitional aspects of the statute rather than a question of fact. The testimony of the two doctors at the Board hearing dealt mainly with possible adverse effects from the ear piercing procedure if not properly carried out. However, the Board after its hearing noted that it had ". . . consistently interpreted the practice of surgery as contained in the Arkansas Medical Practices Act as being the penetration of the epidermis by mechanical instruments or appliances . . . ," and would include the procedure of ear piercing.

At the Board hearing a copy of an advisory opinion issued by the attorney general was introduced. The opinion, relying upon Subsection (e) of 72-604(1), *supra,* determined that ear piercing was a surgical procedure within the intendment of this subsection and thus could be performed only by

a licensed physician or other qualified person acting under physician supervision. The Board premised its determination of the issue to a large extent on the attorney general's opinion.

The opinions of executive agencies are not, of course, binding upon the court, but are held to some extent persuasive. In *Shivers, et al* v. *Moon Distributors, Inc., et al,* 223 Ark. 371, 265 S.W. 2d 947 (1954), we said:

> * * * Inasmuch as the interpretation of statutes is a judicial function, naturally the construction placed upon a statute by an executive or administrative official will not be binding upon the court.

See also *McCarley* v. *Orr,* 247 Ark. 109, 445 S.W. 2d 65 (1969).

We cannot agree with the interpretation placed on the statute by the attorney general and the Board. In interpreting statutes " . . . we give words their ordinary and usually accepted meaning in common language [citations omitted]," *Phillips Petroleum Co.* v. *Heath,* 254 Ark. 847, 497 S.W. 2d 30 (1973); *Kaiser* v. *Price-Fewell, Inc.,* 235 Ark. 295, 359 S.W. 2d 449 (1962), and avoid resort to " . . . subtle and forced construction for the purpose of limiting or extending the meaning [citation omitted]," *Black* v. *Cockrill, Judge,* 239 Ark. 367, 389 S.W. 2d 881 (1965).

"Surgery" is a word which, commonly defined, embraces a more complex procedure than the relatively simple technique used in piercing ears. Webster's New International Dictionary, 2nd Ed., defines surgery as:

> That branch of medical science, art, and practice, which is concerned with the correction of deformities and defects, the repair of injuries, the diagnosis and cure of diseases, the relief of suffering, and the prolongation of life, by manual and instrumental operations.

Black's Law Dictionary, Revised 4th Ed., 1968, defines surgery as:

> The art or practice of healing by manual operation; that

branch of medical science which treats of mechanical or operative measures for healing diseases, deformities or injuries.

To the same effect see Random House Dictionary of the English Language, 1966 Ed., and Maloy's Medical Dictionary for Lawyers. It follows that when we accord the word "surgery" its most commonly accepted definition such definition excludes the process here under review.

We noted in *Aetna Life Ins. Co. & Pacific Mutual Life Ins. Co.* v. *Orr,* 205 Ark. 566, 169 S.W. 2d 651 (1943), that:

> . . . [S]urgery is defined as: "That branch of medical science which treats of mechanical or operative measures for *healing diseases, deformities or injuries.*" (Italics supplied.)

The statutory language at issue herein denominates as the practice of medicine the representation to the public by an individual of those skills which can aid in the palliation or prevention of " . . . any human disease, ailment, injury, deformity, or physical or mental condition . . . " by various methods including surgery.

The case of *People* v. *Lehrman,* 251 App. Div. 451, 296 N.Y.S. 580 (N.Y. App. Div. 1937), construed the statutory words "practice of medicine" as related to electrolysis for hair removal. This process involved the penetration of the skin with an electrically charged needle. The court held that the definition in the statute in *Lehrman* (basically analogous to our own) was never meant to include the process questioned, and the court stated:

> Practices such as this have always been held to be matters of personal taste and adornment and not connected with the practice of medicine.

Ear piercing is a simple physical change effected solely to facilitate the wearing of ear ornamentation. It is an uncomplicated penetration of the skin and tissue of the ear lobe by a sharp instrument. The procedure is not as serious as the normal anatomical change customarily wrought by surgery. It is not a corrective undertaking, nor one intended to ac-

complish a palliative objective. No transformation other than an opening in the ear lobe is created, and it is thus distinguishable from the more conspicuous alteration normal cosmetic surgery is intended to provide.

Although not controlling, we note that in Texas the attorney general, in interpreting a statute similar to our own, ruled that ear piercing did not constitute the practice of medicine. Other states, including Arizona, Virginia, Kansas, New Jersey, Georgia and California, have, through opinions rendered by their respective attorneys general or state medical boards, excluded the piercing of ears as a procedure to be found within the term "the practice of medicine." Appellee has not cited and our research has not disclosed any decisions to the contrary except the decision involved in this appeal.

We are not unmindful nor unconcerned about possible adverse effects from "uncontrolled ear piercing." However, we are not at liberty to declare, by judicial interpretation, a procedure "surgery" which is not encompassed by the legislative enactment under consideration.

Reversed.